# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MARIGLEN YSKOLLARI, *individually and on behalf of all others similarly situated*, | **Case No.**: |
| Plaintiffs, | |
| vs. | **JURY TRIAL DEMANDED** |
| LUMINAR TECHNOLOGIES, INC., AUSTIN RUSSELL, and TOM FENNIMORE, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Mariglen Yskollari ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, their counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Luminar Technologies, Inc. ("Luminar" or the "Company"), with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports published by and regarding Luminar; and (c) review of other publicly available information

concerning Luminar.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of persons and entities that purchased or otherwise acquired Luminar securities between March 20, 2025, and May 14, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants (defined infra) under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Luminar's principal executive offices are located in this Judicial District. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

5.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of

interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, acquired Luminar securities at artificially inflated prices during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

7.      Defendant Luminar is a Delaware corporation with principal executive offices located at 2603 Discovery Drive, Suite 100, Orlando, Florida 32826. Luminar's Class A common stock trades in an efficient market on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "LAZR".

8.      Defendant Austin Russell ("Russell") served as Luminar's President, Chief Executive Officer ("CEO"), and Chairman of the Company's Board of Directors ("Board") at all relevant times.

9.      Defendant Tom Fennimore ("Fennimore") has served as Luminar's Chief Financial Officer at all relevant times.

10.      Defendants Russell and Fennimore are sometimes referred to herein collectively as the "Individual Defendants."

11.      The Individual Defendants possessed the power and authority to

control the contents of Luminar's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Luminar's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Luminar, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

12.     "Light Detection and Ranging" technology or "LiDAR" is a remote sensing technology that uses laser light to measure distances and create detailed 3D models of the environment. LiDAR has many applications including helping automobiles and their drivers sense and understand surroundings.

13.     Luminar purports to be a technology company specializing in advanced LiDAR hardware and software solutions for vehicles.

14.     The Company was founded in 2012 by Defendant Russell while he

was still in high school. Defendant Russell went on to briefly attend Stanford University before winning the prestigious Thiel Fellowship, which allowed him the means to drop out of school and focus on developing Luminar. Over the next few years, Defendant Russell worked in secret to self-engineer and manufacture the Company's LiDAR components.

15.    In 2020, Luminar became a public company and began trading on the NASDAQ stock exchange under the ticker symbol "LAZR." Thereafter, Defendant Russell became the Company's CEO and Chairman of the Board.

16.    Since that time, and throughout the Class Period, Defendant Russell remained the fixture personality and key employee of the Company.

### The Defendants' Materially False and Misleading Statements Issued During the Class Period

17.    The Class Period begins on March 20, 2025, when Luminar issued a press release to announce its quarterly business update and financial results for the fourth quarter and full year of 2024 (the "4Q24 Press Release"). The 4Q24 Press Release included the following projected business milestones to be achieved by the end of 2025:

1. **Series Production:** Ramp series production volume at least 3x year-over-year; Drive economies of scale; Launch additional vehicle models.

2. **Next-Generation Technology:** Progress on Luminar Halo milestones in customer development contracts for SOP.

3. **Business Model:** Streamline Luminar's operations with customer transitions to a singular technology platform (Luminar Halo) to drive efficient execution, reduced costs, and accelerated path to profitability.

18.    In connection with the 4Q24 Press Release, Luminar published a slide deck that provided graphic presentations of its Business Update (the "4Q24 Presentation"). The 4Q24 Presentation included a slide providing full year 2025 financial guidance stating, in pertinent part:

> **Revenue**
> FY'25 Total Revenue Growth of 10% to 20%
> •    3x expected increase in LiDAR shipments for series production
> ***
> •    Assumes FY'25 sensor shipments of 30k-33k versus ~9k in FY'24…

19.    On the same day, the Defendants held an investor conference call to discuss Luminar's latest financial results. In his opening remarks, Defendant Russell reiterated guidance for full year 2025 stating, in pertinent part:

> For 2025, we expect – our full year revenue growth, to be in the range of 10% to 20%. This growth will be almost entirely driven by a greater than three times forecasted increase in our sensors, from approximately 9,000 in 2024, to a range that we're currently forecasting of call it 30,000 to 33,000 this year.

20.    On March 28, 2025, Luminar filed with the SEC its quarterly report on Form 10-K for the period ended December 31, 2024 (the "4Q24 Report") which was signed by Defendants Russell and Fennimore. Attached to the 4Q25 Report were

certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Russell and Fennimore attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.    The 4Q24 Report neglected to state Defendant Russell had engaged in conduct that would make him the subject of an inquiry by the Audit Committee of the Board of Directors, but stated the following, in pertinent part, regarding Code of Business Conduct and Ethics:

> We have adopted a Code of Business Conduct and Ethics that **applies to all of the members of our board of directors, officers and employees, including our principal executive officer**,[1] principal financial officer, principal accounting officer or controller, or persons performing similar functions.

22.    The 4Q24 Report stated the following, in pertinent part regarding Defendant Russell:

> We are highly dependent on Austin Russell, our Founder, President and Chief Executive Officer. Mr. Russell created our first LiDAR product and he remains deeply involved in all aspects of our business, including product development. **The loss of Mr. Russell would adversely affect our business because his loss could make it more difficult to, among other things, compete with other market participants, manage our R&D activities, and retain existing customers or cultivate new ones. Negative public perception of, or negative news related to, Mr. Russell may also adversely affect our brand, relationships with customers, or standing in the industry**.

---

[1]  Emphasis added to bolded and italicized words unless otherwise noted.

23.    On March 20, 2025, Luminar issued a press release to announce its quarterly business update and financial results for the first quarter of 2025 (the "1Q25 Press Release"). The 1Q25 Press Release included the following projected business milestones to be achieved by the end of 2025, which was a reiteration of the guidance provided in the 4Q24 Press Release:

1. **Series Production:** Ramp series production volume at least 3x year-over-year; Drive economies of scale; Launch additional vehicle models.
    o *On track.* Luminar shipped ~6k LiDARs in Q1'25, up approximately 50% from ~4k in Q4'24, driven entirely by an increase in automotive series production sensor sales. This brings the cumulative production shipments to ~14k.

2. **Next-Generation Technology:** Progress on Luminar Halo milestones in OEM development contracts.
    o *On track.* Luminar is successfully executing development on its Halo LiDAR product and advancing its work against its OEM contracts.

3. **Business Model:** Streamline Luminar's operations with customer transitions to a singular technology platform to drive efficient execution, reduced costs, and accelerated path to profitability.
    o *On track…*

24.    In connection with the 1Q25 Press Release, Luminar published a slide deck that provided graphic presentations of its Business Update (the "1Q25 Presentation"). The 1Q25 Presentation included a slide that reiterated full year 2025 financial guidance stating, in pertinent part:

> **Revenue**
> *Maintained*
> FY'25 Total Revenue Growth of 10%

to 20%
- \>3x expected increase in LiDAR
  shipments for series production

***

- Still assumes FY'25 sensor shipments of
  30k-33k versus ~9k in FY'24…

25.     The statements referenced in paragraphs 17-24 above, made by or attributed to Defendants, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Russell was engaged in undisclosed conduct that would make him the subject of an inquiry by the Audit Committee of the Board of Directors; (2) this conduct created material risk that Defendant Russell would be released from his positions at the Company; (3) Luminar's loss of Russell as an employee would then create material risk of adversely affecting the Company's business by making it more difficult to, compete with other market participants, manage R&D activities, and retain existing customers or cultivate new ones. Further, negative public perception and negative news related to Defendant Russell could also adversely affect Luminar's brand, relationships with customers, or standing in the industry; (4) accordingly, Luminar had no reasonable basis to provide and/or maintain the Company's financial guidance; and (5) as a result, Defendants' public statements were

materially false and/or misleading at all relevant times.

**The Truth Begins to Emerge**

26.     On May 14, 2025, after the market close, and approximately 30 minutes after Luminar issued the 1Q25 Press Release, the Company issued a second press release announcing that Defendant Russell had resigned as President and CEO of the Company and as the Chairman of the Board, "effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of the Board of Directors."

27.     Also on May 15, 2025, investment analysts at J.P. Morgan issued a report downgrading Luminar stock from Overweight to Neutral. As rationale, the report stated, in pertinent part:

> We are moving to Neutral from Overweight following the announcement of Founder and CEO, Austin Russell, stepping down effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of Luminar's Board of Directors. We believe Austin's leadership in technology and his industry reputation were central to the bull thesis for the company (for us and the investors we engage with), and while the company retains a strong talent bench and a robust product portfolio, including a best-in-class and vertically integrated technology stack, the uncertainty surrounding technology leadership, the conversion of commercial negotiations, and the overall long-term roadmap leads us to adopt a more cautious stance, especially in the context of a choppy auto industry backdrop due to tariff uncertainty.

28.     On this news, Luminar's stock price fell $0.80 per share, or 16.80%, to close at $3.96 per share on May 15, 2025.

29.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Subsequent Post Class Period Events

30.    On May 21, 2025, analysts at BofA Global Research issued a report announcing termination of coverage of Luminar. As rationale, the report stated, in pertinent part:

> **Final investment opinion**
> We have had an Underperform rating on LAZR given our view that LAZR will need to raise meaningful additional capital. The recent departure of its CEO and founder, Austin Russell, could also adversely impact its ability to innovate.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Luminar securities between March 20, 2025 and May 14, 2025, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.    The members of the Class are so numerous that joinder of all members

is impracticable. Throughout the Class Period, Luminar's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Luminar securities were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Luminar or its transfer agent and may be notified of the pendency of this action by mail or email, using a form of notice similar to that customarily used in securities class actions.

33.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> (a)    whether the federal securities laws were violated by Defendants' actions as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Luminar; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.    The market for Luminar's securities was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Luminar's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class, relying upon the integrity of the market price of the Company's securities and market information relating to Luminar, purchased or otherwise acquired Luminar's securities and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Luminar's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Luminar's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Luminar's financial well-being and prospects. These material misstatements and/or omissions had the effect of creating, in the market, an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was

14

revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Luminar's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Luminar, and, as to the Individual Defendants, their control over, and/or receipt and/or modification of Luminar's allegedly materially misleading misstatements and/or

their associations with the Company which made them privy to confidential proprietary information concerning Luminar, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.    The market for Luminar's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Luminar's securities traded at artificially inflated prices during the Class Period. On March 21, 2025, the Company's common stock price closed at a Class Period-high of $8.35 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Luminar's securities and market information relating to Luminar, and have been damaged thereby.

44.    During the Class Period, the artificial inflation of Luminar's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Luminar's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Luminar and its business, operations, and prospects, thus causing the price of the Company's

securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company securities. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.    At all relevant times, the market for Luminar's securities was an efficient market for the following reasons, among others:

(a)    Luminar securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Luminar filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Luminar regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Luminar was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports

17

were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.    As a result of the foregoing, the market for Luminar's securities promptly digested current information regarding Luminar from all publicly available sources and reflected such information in Luminar's common stock price. Under these circumstances, all purchasers of Luminar's securities during the Class Period suffered similar injury through their purchase of Luminar's securities at artificially inflated prices and a presumption of reliance applies.

47.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

48.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Luminar who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

49.    Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 12-48 above as if fully set forth herein.

50. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Luminar's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each Defendant, took the actions set forth herein.

51. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Luminar's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

52. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the wires and/or mails, engaged and participated in a continuous course of conduct to

conceal adverse material information about Luminar's financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse nonpublic information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Luminar's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Luminar and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans,

projections, and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Luminar's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether

those statements were false or misleading.

56.    As a result of the dissemination of materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Luminar's securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Luminar's securities during the Class Period at artificially high prices and were damaged thereby.

57.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Luminar was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Luminar securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

60.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 12-48 above as if fully set forth herein.

61.    Individual Defendants acted as controlling persons of Luminar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the

62.    Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had

unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.    As set forth above, Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## <u>PRAYER FOR RELIEF</u>

65.    WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other

Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

66.    Plaintiff hereby demands a trial by jury.

DATED: July 23, 2025                    Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

By: */s/ Andrew J. Shamis*
Andrew J. Shamis (FL Bar No. 101754)
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Fax: (786) 623-0915
Email: ashamis@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg (FL Bar No. 100537)
Gabriel Mandler (FL Bar No. 1002499)
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (786) 289-9471
Fax: (786) 623-0915
Email: scott@edelsberglaw.com
Email: gabriel@edelsberglaw.com

*Attorneys for Plaintiff Mariglen Yskollari*

## PLAINTIFF'S SWORN CERTIFICATION
## <u>PURSUANT TO THE FEDERAL SECURITIES LAWS</u>

I, Mariglen Yskollari, hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification and to institute legal action against Luminar Technologies, Inc. ("Luminar") and other defendants. I have reviewed a complaint against Luminar and other defendants, alleging violations of the federal securities laws on behalf of all those who purchased or otherwise acquired Luminar securities, and authorize its filing and the filing of a Lead Plaintiff motion.

2.      I did not purchase or acquire Luminar securities at the direction of counsel, or in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.

4.      My transactions in Luminar securities during the Class Period are identified in the annexed table.

5.      I have not served nor sought to serve as a lead plaintiff in any class action under the federal securities laws during the last three years.

6.      I will not accept payment for serving as a lead plaintiff beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: <u>  07 / 23 / 2025  </u>
                (Date)

_____

Mariglen Yskollari

Doc ID: 7ee177ef028e1aa2464a7d51d970fdc0ab0997dc

# ANNEX

## Luminar Technologies, Inc.

### NASDAQ:LAZR

| Ticker | Date | Trans Type | No. Shares | Price |
|--------|------|------------|------------|-------|
| LAZR | 3/25/2025 | Buy | 200 | $6.30 |
| LAZR | 4/10/2025 | Buy | 100 | $4.45 |

Doc ID: 7ee177ef028e1aa2464a7d51d970fdc0ab0997dc