UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| MARIGLEN YSKOLLARI, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   vs.<br><br>LUMINAR TECHNOLOGIES, INC., AUSTIN RUSSELL, and TOM FENNIMORE,<br><br>          Defendants. | Case No.  6:25-cv-01384-CEM-NWH<br><br><u>CLASS ACTION</u><br><br>**MOTION OF HOOK CHOK FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT** |

# TABLE OF CONTENTS

MOTION ............................................................................................................... 1

MEMORANDUM OF LAW ................................................................................... 1

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF FACTS ......................................................................... 3

III.  ARGUMENT ............................................................................................. 6

    A.    CHOK SHOULD BE APPOINTED LEAD PLAINTIFF ................. 6

        i.    Chok Is Willing to Serve as Class Representative ................ 7

        ii.   Chok Has the "Largest Financial Interest" in the Action .... 8

        iii.  Chok Otherwise Satisfies the Requirements of Rule 23 ..... 10

        iv.   Chok Will Fairly and Adequately Represent the Interests of
            the Class and Is Not Subject to Unique Defenses ................ 13

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
        APPROVED ..................................................................................... 14

IV.   CONCLUSION ......................................................................................... 16

LOCAL RULE 3.01(g) CERTIFICATION ........................................................... 16

CERTIFICATE OF SERVICE ............................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Brustein v. Lampert,*
No. 04-61159-CIV, 2005 WL 8154797 (S.D. Fla. June 16, 2005) .............. 10

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ..........................................................................9

*In re Comverse Tech., Inc. Sec. Litig.,*
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y.
Mar. 2, 2007) ..................................................................................... 9, 15

*In re Molson Coors Brewing Co. Sec. Litig.,*
233 F.R.D. 147 (D. Del. 2005)...................................................................... 14

*In re Olsten Corp. Sec. Litig.,*
3 F.Supp.2d 286 (E.D.N.Y. 1998) .................................................................9

*In re Petrobras Securities Litigation,*
No. 14-cv-09662 (S.D.N.Y.)........................................................................ 15

*Janbay v. Canadian Solar, Inc.,*
272 F.R.D. 113 (S.D.N.Y. 2010).................................................................. 11

*Klein v. Altria Group, Inc. et al,*
No. 3:20-cv-00075 (E.D. Va.) ..................................................................... 15

*Kornfield v. Opteum Inc.,*
No. 07-14278-CIV, 2008 WL 11408525 (S.D. Fla. Sept. 29, 2008)...............9

*Miller v. Dyadic Int'l, Inc.,*
No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ................ 12

*Miller v. Dyadic Int'l, Inc.,*
No. 07-80948CIV, 2007 WL 4754041 (S.D. Fla. Dec. 14, 2007) ...................9

*Mulvaney v. Geo Grp., Inc.,*
No. 16-CV-81494, 2016 WL 10519276 (S.D. Fla. Nov. 21, 2016) .............. 14

*Piven v. Sykes Enters.,*
137 F.Supp.2d 1295 (M.D. Fla. 2000) ........................................................ 11

ii

*Plymouth Cnty. Ret. Sys. v. Carter's, Inc.*,
  No. CIV.A. 1:08-CV-2940-JOF, 2009 WL 692141 (N.D. Ga.
  Mar. 13, 2009) .......................................................................................9

*Prado-Steinman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000)................................................................ 11

*Tran v. ERBA Diagnostics, Inc.*,
  No. 15-CV-24440, 2016 WL 7438833 (S.D. Fla. Apr. 8, 2016).............. 10, 11

*Vincelli v. National Home Health Care Corp.*,
  112 F.Supp.2d 1309 (M.D. Fla. 2000) ............................................................9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248, 253 (S.D.N.Y. 2003) ........................................................ 12

**Statutes**

15 U.S.C. § 78u-4(a)(3).................................................................................*passim*

Securities Exchange Act of 1934............................................................. 1, 8, 11

Private Securities Litigation Reform Act of 1995 ....................................*passim*

**Rules**

Federal Rule of Civil Procedure 23 ...........................................................*passim*

Local Rule 3.01(g) .................................................................................. 16, 17

## MOTION

Hook Chok ("Chok"), by and through his counsel, hereby moves this Court pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Chok as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities that purchased or otherwise acquired Luminar Technologies, Inc. ("Luminar" or the "Company") securities between March 20, 2025 and May 14, 2025, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Miller Shah LLP ("Miller Shah") as Liaison Counsel for the Class.

This Motion is supported by the Memorandum of Law submitted herewith, the Declaration of Nathan C. Zipperian in Support of Motion ("Zipperian Decl."), and all exhibits thereto.

## MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

The amended complaint ("AC") (Dkt. No. 5) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Luminar investors, including Chok, incurred significant losses following the

1

disclosures of the alleged fraud, which caused Luminar's share price to fall sharply, damaging Chok and other Luminar investors.

Pursuant to the PSLRA, the court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Chok incurred losses of approximately $29,071 in connection with his Class Period transactions in Luminar securities. *See* Zipperian Decl., Exhibit ("Ex.") A. Accordingly, Chok believes that he has the largest financial interest in the relief sought in this Action. Beyond his considerable financial interest, Chok also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Chok has selected Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class. These firms and their attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Chok respectfully requests that the Court enter an Order appointing Chok as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the AC, "Light Detection and Ranging" technology or "LiDAR" is a remote sensing technology that uses laser light to measure distances and create detailed 3D models of the environment.  Dkt. No. 5 ¶ 12. LiDAR has many applications including helping automobiles and their drivers sense and understand surroundings.  *Id.*

Luminar purports to be a technology company specializing in advanced LiDAR hardware and software solutions for vehicles.  *Id.* ¶ 13.

The Company was founded in 2012 by Defendant, Austin Russell ("Russell"), while he was still in high school.  *Id.* ¶ 14.  Russell went on to briefly attend Stanford University before winning the prestigious Thiel Fellowship, which allowed him the means to drop out of school and focus on developing Luminar.  *Id.*  Over the next few years, Russell worked in secret to self-engineer and manufacture the Company's LiDAR components.  *Id.*

In 2020, Luminar became a public company and began trading on the NASDAQ stock exchange under the ticker symbol "LAZR."  *Id.* ¶ 15.

3

Thereafter, Defendant Russell became the Company's CEO and Chairman of the Board. *Id.*

Since that time, and throughout the Class Period, Russell remained the fixture personality and key employee of the Company. *Id.* ¶ 16.

The AC alleges that, throughout the Class Period, Defendants made statements that were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. *Id.* ¶ 25. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Russell was engaged in undisclosed conduct that would make him the subject of an inquiry by the Audit Committee of the Board of Directors; (2) this conduct created material risk that Russell would be released from his positions at the Company; (3) Luminar's loss of Russell as an employee would then create material risk of adversely affecting the Company's business by making it more difficult to, compete with other market participants, manage R&D activities, and retain existing customers or cultivate new ones. *Id.* Further, negative public perception and negative news related to Russell could also adversely affect Luminar's brand, relationships with customers, or standing in the industry; (4) accordingly, Luminar had no reasonable basis to provide and/or maintain the Company's financial guidance; and (5) as a

4

result, Defendants' public statements were materially false and/or misleading at all relevant times. *Id.*

On May 14, 2025, after the market close, and approximately 30 minutes after Luminar issued its 1Q25 Press Release, the Company issued a second press release announcing that Russell had resigned as President and CEO of the Company and as the Chairman of the Board, "effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of the Board of Directors." *See id.* ¶ 26.

Also on May 15, 2025, investment analysts at J.P. Morgan issued a report downgrading Luminar stock from Overweight to Neutral. *Id.* ¶ 27. As rationale, the report stated, in pertinent part:

> We are moving to Neutral from Overweight following the announcement of Founder and CEO, Austin Russell, stepping down effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of Luminar's Board of Directors. We believe Austin's leadership in technology and his industry reputation were central to the bull thesis for the company (for us and the investors we engage with), and while the company retains a strong talent bench and a robust product portfolio, including a best-in-class and vertically integrated technology stack, the uncertainty surrounding technology leadership, the conversion of commercial negotiations, and the overall long-term roadmap leads us to adopt a more cautious stance, especially in the context of a choppy auto industry backdrop due to tariff uncertainty.

*Id.*

5

On this news, Luminar's stock price fell $0.80 per share, or 16.80%, to close at $3.96 per share on May 15, 2025. *Id.* ¶ 28.

As a result of Defendants' wrongful acts, omission, and the precipitous decline in the market value of the Company's securities, Chok and other Class members have suffered significant losses and damages. *See id.* ¶ 29.

## III. ARGUMENT

### A. CHOK SHOULD BE APPOINTED LEAD PLAINTIFF

Chok should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (i) the pendency of the action; and (ii) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).  The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Chok satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### i.    Chok Is Willing to Serve as Class Representative

On July 24, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Luminar and other defendants, and advising investors in Luminar securities that they had until September 22, 2025—*i.e.*,

60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Zipperian Decl., Ex. B.

Chok has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Chok satisfies the first requirement to serve as Lead Plaintiff of the Class.

### ii. Chok Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Chok has the largest financial interest of any Luminar investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill.

Aug. 6, 1997). In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and routinely applied by courts in the Eleventh Circuit. *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Carter's, Inc.*, No. CIV.A. 1:08-CV-2940-JOF, 2009 WL 692141, at \*2-3 (N.D. Ga. Mar. 13, 2009) (assessing financial interest with reference to the *Lax* factors); *see also Miller v. Dyadic Int'l, Inc.*, No. 07-80948CIV, 2007 WL 4754041, at \*1-2 (S.D. Fla. Dec. 14, 2007) (same). Of the *Lax* factors, courts in the Eleventh Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Vincelli v. National Home Health Care Corp.*, 112 F.Supp.2d 1309, 1317 (M.D. Fla. 2000) (equating financial interest with monetary loss); *Kornfield v. Opteum Inc.*, No. 07-14278-CIV, 2008 WL 11408525, at \*4 (S.D. Fla. Sept. 29, 2008) (same).

During the Class Period, Chok incurred losses of approximately $29,071 in connection with his Class Period transactions in Luminar securities. *See* Zipperian Decl., Ex. A. To the extent that Chok possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[1]*See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at \*6-8 (E.D.N.Y. Mar. 2, 2007).

### iii.   Chok Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification.  Instead, a *prima facie* showing that the movant satisfies Rule 23's requirements is sufficient.  *See Brustein v. Lampert*, No. 04-61159-CIV, 2005 WL 8154797, at *7 (S.D. Fla. June 16, 2005); *Tran v. ERBA Diagnostics, Inc.*, No. 15-CV-24440, 2016 WL 7438833, at *1 (S.D. Fla. Apr. 8, 2016).  Moreover, typicality and adequacy of representation are the only provisions of Rule 23 relevant to a determination of lead plaintiff under the PSLRA.  *See Brustein*, 2005 WL 8154797, at *7;

10

*Tran*, 2016 WL 7438833, at *1. Further, the AC in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Chok. *See* Dkt. No. 5 ¶¶ 32, 35.

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Piven v. Sykes Enters.*, 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000) (same). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992))

Chok's claims are typical of those of the Class. Chok alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Luminar, or by omitting to state material facts necessary to make the statements they did make not misleading. Chok, like

11

other Class members, purchased Luminar securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Luminar's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) "is satisfied where . . .: '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class [representative] has sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008) (quoting *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)).

Chok is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz and Miller Shah, Chok has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz and Miller Shah to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In

12

addition to Pomerantz and Miller Shah, Chok is also represented by the law firm of Bronstein, Gewirtz & Grossman LLC in this litigation.  There is no evidence of antagonism or conflict between Chok's interests and those of the Class.  Moreover, Chok has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Zipperian Decl., Ex. C), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Chok has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See id.*, Ex. D.

### iv.   Chok Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Chok's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Chok's ability and desire to fairly and adequately represent the Class has been discussed above.  Chok is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Chok should be appointed Lead Plaintiff for the Class.

## B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the Class, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  "The Court should interfere with lead plaintiff's selection only when necessary 'to protect the interests of the class.'"  *Mulvaney v. Geo Grp., Inc.*, No. 16-CV-81494, 2016 WL 10519276, at *3 (S.D. Fla. Nov. 21, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Chok has selected Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of

14

investors, as detailed in its firm resume submitted herewith. *See* Zipperian Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *Id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *Id.*

Miller Shah is also well-qualified to serve as Liaison Counsel for the Class in this Action. As its firm resume reflects, Miller Shah maintains an office in Fort Lauderdale, Florida, and the firm specializes in securities class action matters, among other practice areas. *See id.*, Ex. F. Miller Shah's attorneys have experience in achieving substantial recoveries in class actions, and they have extensive familiarity with the Local Civil Rules and practice norms of this District.

15

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Chok's counsel, Pomerantz and Miller Shah, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving Chok's selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Chok respectfully requests that the Court issue an Order: (1) appointing Chok as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

### LOCAL RULE 3.01(g) CERTIFICATION

Chok is aware of Local Rule 3.01(g), which provides, in relevant part, that "[b]efore filing a motion in a civil action, . . . the movant must confer with the opposing party in a good faith effort to resolve the motion." Here, pursuant to the PSLRA, the deadline to file a motion for appointment as Lead Plaintiff in this Action is September 22, 2025, on which date any member of the putative Class may so move. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II). Chok will thus not know the identities of the other putative Class members who intend to file competing motions for Lead

16

Plaintiff appointment until September 23, 2025—the day after the statutory deadline—making conferral with opposing parties prior to the filing of Chok's motion papers impracticable. Under these circumstances, Chok respectfully requests that compliance with Local Rule 3.01(g) be waived in this instance.

Dated: September 22, 2025                Respectfully submitted,

                                         **MILLER SHAH LLP**

                                         By: */s/ Nathan C. Zipperian*
                                         Nathan C. Zipperian
                                         Jayne A. Goldstein
                                         2103 N. Commerce Parkway
                                         Fort Lauderdale, Florida 33326
                                         Telephone: (954) 515-0123
                                         Facsimile: (866) 300-7367
                                         nczipperian@millershah.com
                                         jagoldstein@millershah.com

                                         *Counsel for Hook Chok and Proposed*
                                         *Liaison Counsel for the Class*

                                         **POMERANTZ LLP**
                                         Jeremy A. Lieberman (Lead Counsel)
                                         (*pro hac vice* application forthcoming)
                                         J. Alexander Hood II
                                         (*pro hac vice* application forthcoming)
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (917) 463-1044
                                         jalieberman@pomlaw.com
                                         ahood@pomlaw.com

                                         *Counsel for Hook Chok and Proposed*
                                         *Lead Counsel for the Class*

17

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Hook Chok*

18

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Nathan C. Zipperian*
Nathan C. Zipperian
